■ In the Matter of CONSTANCE F. FLYNN et al., Appellants, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Respondent.—Judgment of the Supreme Court, New York County (Stanley Parness, J.), entered February 1, 1989, denying appellants' application for discovery or supplementation of

the record and dismissing the CPLR article 78 petition, unanimously affirmed, without costs.

At issue upon this appeal is whether the terms of the 99-year leases ultimately executed by respondent and Times Square Center Association (TSCA) were adequately considered at a public hearing held December 10, 1987 and, therefore, whether respondent complied with the provisions of section 6 of the New York State Urban Development Corporation Act ([UDC Act] L 1968, ch 174, § 1, as amended). This statute provides, in pertinent part, that UDC may sell or lease property constituting a land use improvement project after holding a public hearing upon published notice "which shall include a statement of the identity of the proposed purchaser or lessee and of his proposed use or reuse of the land use improvement project area or applicable portion thereof, the price or rental to be paid by such purchaser or lessee, all other essential conditions of such sale or lease, and a statement that a public hearing upon such sale or lease will be held before the corporation at a specified time and place on a date not less than ten days after such publication, and provided further that such public hearing is held in accordance with such notice" (McKinney's Uncons Laws of NY § 6256 [1] [c]; UDC Act § 6 [1] [c]). Appellants' objections are addressed to the failure to disclose certain credits which operate to reduce the amount of rent recovered by respondent and, ultimately, by the City of New York, and the failure to disclose other details of the agreements which are alleged to constitute "essential conditions" of the lease. The petition is brought pursuant to CPLR 7803 (3) and asserts, without discrimination, all of the grounds set forth in that section.

The petition alleges that respondent failed to give public notice of (1) the rental to be paid and of the final essential terms of the leases and (2) the identity of the lessee. The question of the propriety of the public notice, however, has already been litigated and upheld (*Leichter v New York State Urban Dev. Corp.*, index No. 30229/87 [Sup Ct, NY County, Mar. 28, 1988], *affd on opn below* 145 AD2d 366 [1988]). The question appellants' petition in fact raises is whether the leases ultimately executed by respondent and the developer, TSCA, are identical with the proposed leases discussed at the December 10, 1987 hearing.

As to the identity of the lessee, it is clear that the notice of hearing accurately reflects the lessee named in the leases. Since the propriety of the public notice has been litigated, the question of whether the lessee stated in the notice (and in the

leases themselves) is identical with the lessee approved by the Board of Estimate is not before us. At issue is whether the rental to be paid by TSCA and "all other essential conditions" of the lease were disclosed at the hearing as required by UDC Act § 6 (1) (c).

Realistically, the public hearing can only consider the proposed lease in broad terms. As appellants point out in their brief, the lease documents comprise some 5,000 pages in the record, and it cannot be presumed that anything more than a general overview of the lease provisions is contemplated by the statute. It is a fair construction to state that the law requires the essential terms of the lease to be fairly disclosed, including a reasonable indication of the rent to be paid and the persons or organizations who will comprise the lessee.

Given the complexity of the leases, their duration and the scale of the project, considerable flexibility must be provided to meet future exigencies. For instance, rent is divided into base rent, percentage rent, alternate rent and additional rent (designated rent erosion reimbursements), which relate to such variables as the use of the premises, cash flow, the passage of time and the amount of credit taken against the rent by TSCA. It is obvious, therefore, that the statutory requirement for disclosure of the "rental to be paid" cannot be construed literally. In our opinion, the operative question is whether respondent substantially complied with the disclosure requirements of the statute and whether the terms of the leases executed with TSCA reasonably resemble the terms discussed at the public hearing.

The specific objection raised by appellants is that respondent failed to inform the public "that the City's revenues from the projects office buildings and the developer's payments for public improvements will be reduced by undisclosed lease terms." Upon closer examination, however, it is clear that appellants fail to distinguish between revenue for the city (rent), revenue otherwise payable to the city allocated to construction costs which would normally be borne by the city (public benefit fund) and nonrevenue items designed merely to supply funding for public facilities (in particular, subway facilities) which would otherwise have to be funded by loans or out of general revenues. While we would go so far as to say that respondent created some confusion by considering as site acquisition costs (SAC) items which are clearly capital expenditures, such as subway construction expenses, there is no indication that the category to which these items were assigned is anything more than an accounting convenience.

Moreover, a reading of the notice of hearing reveals the basic methodology. It indicates that tax revenues normally payable to the city will be placed in a public benefit trust fund, the proceeds of which will be used either to pay for subway improvements or to reimburse TSCA for excess site acquisition costs (ESAC). Those ESACs include contributions made for subway construction beyond the $88,000,000 in SACs which TSCA is obliged to pay pursuant to the agreement and as stated in the notice of hearing. Whether the subway improvements are funded by revenues otherwise payable to the city as taxes or moneys otherwise payable to the city as rent is not materially significant.

It is also necessary to emphasize that the notice and hearing provision contained in UDC Act § 6 does not preclude changes in the final leases which reflect either comments received during the hearing or the results of ongoing negotiations with the developer prior to execution. The power to lease a public development property is specifically granted to respondent (UDC Act § 5), and it must be accorded reasonable discretion in its exercise thereof. While the city may experience some reduction in revenue from respondent's inclusion of subway improvements as costs associated with the acquisition, the designation of those costs as a SAC cannot, without more, be said to constitute an abuse of discretion by respondent.

Similarly, the statement in the notice of hearing to the effect that TSCA will provide funding with respect to the purchase and renovation of certain theaters does not, as appellants contend, amount to nondisclosure that rent receipts may be reduced because TSCA may apply rental income towards theater expenses. Again, while the notice might have been clearer, the obligation to provide funding is not tantamount to the obligation to make payment. For instance, a bank pursuant to a mortgage may be obliged to provide funding for a purchase of real property, but that is quite distinct from any obligation to make payment on behalf of the purchaser. Read together with the provisions for subway improvements and for the establishment of a public benefit trust fund, it is reasonably clear, even from the necessarily abbreviated notice of hearing, that what is contemplated is a source of funding and not a source of payment.

This court declines to elevate UDC Act § 6 to the role urged for it by appellants, which would entail public oversight of the final terms and conditions of any lease of a public project. Respondent must be granted the discretion necessary to the fulfillment of its statutory mandate (UDC Act § 2) and, there-

fore, a lease will not be rescinded unless a clear abuse of agency discretion is demonstrated. Appellants have failed to make such a showing and their petition was properly dismissed. Concur—Kupferman, J. P., Carro, Ellerin, Smith and Rubin, JJ.